CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 29 2007
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff, | ) )<br>) | Civil Action No. 5:06-cv-00015 |
| v. | ) ) ) | |
| APPROXIMATELY $8,565.00 IN U.S.<br>CURRENCY, et al.,<br>  Defendants. | ) ) ) ) ) ) | |
| JOHN F. JACKSON,<br>  Plaintiff, | ) ) ) | Civil Action No. 5:06-cv-00017 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, et al.<br>  Defendants. | ) ) ) ) | By: Samuel G. Wilson<br>United States District Judge |

The court consolidated two civil actions because they arose out of the seizure of the same property and involve common issues of law and fact. John F. Jackson filed the first action in state court against the Commonwealth of Virginia, various other state entities and law enforcement officers, and the United States Marshals Service and Deputy Marshal Joseph Moorehead. The United States removed the action pursuant to 28 U.S.C. § 2679, and the United States was substituted for Moorehead in accordance with the provisions of the Federal Tort Claims Act (FTCA). The second suit is an *in rem* civil forfeiture action pursuant to 18 U.S.C. § 983 and 21 U.S.C. § 881(a)(4) and (6) in which the United States seeks forfeiture of property it alleges either facilitated drug trafficking or represents the proceeds of drug trafficking. The first

-1-

matter is before the court on the United States' motion to dismiss and the second is on its motion for summary judgement. The court dismisses Jackson's claims against the United States and the United States Marshals Service for lack of jurisdiction in the first matter, and grants, in part, and denies, in part, the United States' motion for summary judgement in the second matter.

I.

From the summer of 1999 to at least September 2000 Jackson was distributing to various customers in the Winchester area of the Western District of Virginia and elsewhere multi-ounce quantities of cocaine and multi-pound quantities of marijuana he obtained in the Reading, Pennsylvania area. (Aug. 26, 2003 Tr. at 17-26; pre-sentence report ¶¶ 5-7). Local law enforcement officials made a controlled buy from Jackson of seven and one-half ounces of cocaine for $9,000, arrested him immediately, and seized a loaded and cocked .380 caliber handgun in the center console of his vehicle. Jackson, who had previously been convicted of operating a continuing criminal enterprise in this district, admitted his involvement and began to cooperate. However, he soon fled the jurisdiction and was a fugitive until February 28, 2003, when state and federal authorities arrested him at his girlfriend's apartment in Penn Hills, Pennsylvania.

During the arrest, Jackson requested one of the officers to retrieve a bundle of money in a dresser drawer. The officers located the money, which consisted of fifty-four $20 bills. Jackson's girlfriend, Lucretia McGee, also consented to the search of the apartment, garage, and a 1999 GMC Yukon Denali parked in the driveway. Officers located and seized a loaded Ruger semi-automatic handgun in the room in which they arrested Jackson, $8,565 in United States

-2-

currency wrapped in a bandana in the Denali's passenger compartment, and thirty sets of tire rims collectively valued at approximately $120,000 in the garage.

On March 1, 2003, officers interviewed Marcus Williams, an individual who claimed that he had known Jackson since August 2002. Williams stated that he had never known Jackson to have held a job but that Jackson paid him to fly to Oklahoma, rent a U-Haul truck, pick up approximately thirty sets of tire rims totaling $120,000 in value and take them to Jackson in Greensboro, North Carolina. On March 5, 2003, officers interviewed McGee. According to McGee, Jackson brought the rims to her apartment around February 14 or 15, 2003. McGee also stated that the Denali belonged to Jackson but Jackson had registered it in her name. State and federal officials seized the rims and the Denali and took them back to Virginia.

A Western District of Virginia grand jury indicted Jackson on April 3, 2003 on drug trafficking and firearm offenses. Jackson pled guilty to conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, 50 grams or more of crack cocaine, and an unspecified quantity of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846, and on May 6, 2004, the court sentenced him to 262 months imprisonment.[1] Meanwhile, the Commonwealth of Virginia, which had instituted forfeiture proceedings concerning the seized property, non-suited those proceedings; Jackson commenced the civil action the United States removed to this court; and the United States commenced the forfeiture proceedings the court consolidated with Jackson's suit.

---

[1] Jackson also received 180 months imprisonment, to run concurrently, for an indictment originating in the Western District of Pennsylvania that was transferred to the Western District of Virginia, for possession of a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g), however, Jackson appealed this sentence. See United States v. Jackson, 200 Fed.Appx.191 (4th Cir. 2006).

The United States has moved to dismiss the FTCA claim and has filed the affidavit of Gerald Auerbach, General Counsel for the Marshals Service, stating that Jackson has not filed an administrative claim with the Marshal's Service relating to the seizure and detention of his property. Jackson has not filed an affidavit or even argued that he has filed the required administrative claim.

The United States also moves for summary judgment on its forfeiture case and has filed two affidavits from Garlan Gochenour, a lieutenant with the Shenandoah County Sheriff's Office. In addition, the court has reviewed transcripts from Jackson's criminal case and his pre-sentence report.

## II.

Under the FTCA, an individual may sue the United States for loss of property resulting from the tortious or negligent conduct of one of its employees, only if that individual exhausts administrative remedies prior to filing suit in federal court, See 28 U.S.C. §§ 2679(b), 2675(a), and the exhaustion requirement is jurisdictional and cannot be waived. McNeil v. United States, 508 U.S. 106 (1993) (upholding dismissal of suit against Government where plaintiff had not exhausted available administrative remedies). Jackson has not contradicted the information contained in Gerald Auerbach's affidavit, which indicates that the United States Marshals Service has no record of any administrative claims arising out of the incident on which Jackson has based his FTCA claim. Therefore, the court dismisses the FTCA claim against the United

States for non-exhaustion.[2]

In addition to the federal defendants, Jackson has also filed suit against state entities and officers. In light of the court's dismissal of Jackson's claim against the United States, the court sees little reason to maintain what is essentially an action against state entities and officers. Assuming that the court has supplemental jurisdiction over these claims, the court has discretion to decline supplemental jurisdiction under 28 U.S.C. § 1367(c). It appears that none of the other state entities and law enforcement officers named as defendants have been served and that there are jurisdictional hurdles to maintaining these claims in federal court under the FTCA, at least as to the state entities. Therefore, the court declines to exercise supplemental jurisdiction over the state entities and officers and remands Jackson's claims against them to the state court.

### III.

In order to succeed in its forfeiture action, the United States must demonstrate a "substantial connection" between the offense and the property it seeks to forfeit. See 18 U.S.C. § 983(c)(1). The court concludes that the United States has proven a substantial connection between the $8,565 in currency and the Denali, and Jackson's drug trafficking. Taking into account that Jackson claims to own the Denali yet placed the vehicle in his girlfriend's name, that there has been no evidence to suggest that Jackson is lawfully employed, Jackson's own admission to dealing drugs, the large sum of money found inside the Denali, and Jackson's failure to marshal any evidence on the issue, the court finds unrebutted circumstantial evidence

---

[2] Jackson cannot bring this action against the Marshals Service because the United States is the only proper party under the FTCA.

that the Denali facilitated unlawful drug activity and that the currency constitutes proceeds of unlawful drug activity and grants summary judgment as to these items. However, the court also finds that at this juncture, the United States has not established a substantial connection between the tires and tire rims and Jackson's drug trafficking, and therefore denies summary judgment as to these items.[3]

## IV.

For the reasons set forth above, the court dismisses Jackson's FTCA claims against the United States and United States Marshals Service for lack of jurisdiction, remands Jackson's remaining claims, and grants, in part, and denies, in part, the United States' motion for summary judgment in its forfeiture action.

**ENTER**: March 28, 2007.

UNITED STATES DISTRICT JUDGE

---

[3] In defense of the forfeiture, Jackson has claimed the items were taken from McGee's apartment in violation of his constitutional rights. Although this contention is doubtful, it is not a defense to the forfeiture. See United States v. $9,041,598.68 in U.S. Currency, 163 F.2d 238 (5th Cir. 1998); United States v. $206,323,556 in U.S. Currency, 998 F.Supp. 693 (S.D.W.V. 1998).
Jackson also appears to claim that since the Commonwealth of Virginia dismissed its forfeiture action, the federal forfeiture action is somehow precluded. However, the concurrent jurisdiction doctrine does not bar federal courts from exercising *in rem* jurisdiction over property after state courts dismiss state forfeiture actions. See United States v. $174,206.00 in U.S. Currency, 320 F.3d 658 (6th Cir. 2003). Here, the Commonwealth of Virginia no longer had an active state forfeiture action pending with regard to these items, and the United States properly exercised its concurrent jurisdiction within the applicable statute of limitations. See 19 U.S.C. § 1621.

-6-